RICHARD LEE GOETSCH,

               Plaintiff,

v.                                     Case No. 23-cv-252-pp

JODI FIELDS and JOHN or JANE DOE
HEALTH SERVICES MANAGER,

               Defendants.

**ORDER DENYING AS MOOT PLAINTIFF'S FIRST REQUEST FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 6), DENYING WITHOUT PREJUDICE PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

Richard Lee Goetsch, who is incarcerated at Racine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to provide him adequate medical treatment. About a month after receiving the complaint, the court received the plaintiff's amended complaint. Dkt. No. 10. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 2, 6, and screens his amended complaint, dkt. no. 10.

**I.    Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. Nos. 2, 6)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without

prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

With his complaint, the plaintiff filed an incomplete motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. The next day, the clerk's office sent the plaintiff a letter instructing him to file, among other things, a completed request for leave to proceed in the district court without prepaying the filing fee. Dkt. No. 3. On March 6, 2023, the court received the plaintiff's second, complete motion to proceed without prepaying the filing fee. Dkt. No. 6.

On March 14, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $22.76. Dkt. No. 9. On March 27, 2023, the court received the full $350 filing fee. The court will grant the plaintiff's second motion for leave to proceed without prepaying the filing fee. The plaintiff's institutional trust account statement showed that he did not have the funds to pay the full $350 filing fee plus the $52 administrative fee. The court will not require him to pay the $52 administrative fee in addition to the $350 filing fee that he has paid in full. The court will deny as unnecessary the plaintiff's first, incomplete motion to proceed without prepaying the filing fee. Because the plaintiff has paid the full filing fee, he is not required to make payments from his institutional account to pay any outstanding balance.

2

## II.     Screening the Amended Complaint

A.     <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The complaint names as defendants Jodi Fields and a John or Jane Doe Health Services Unit (HSU) Manager. Dkt. No. 10 at 1. The complaint notes that these defendants are Wisconsin Department of Corrections (DOC) employees who work at Dodge Correctional Institution. Id.

The plaintiff alleges that sometime in 2021, the Health Services manager failed to help him rehabilitate his "serious injury of left foot" after the plaintiff pleaded with him or her as the supervisor of the "D.C.I." Health Services Unit. Id. at 3–4. He says he requested "reasonable accommodations [sic]" including a "wheelchair and other accommodations [sic]," but the defendant was deliberately indifferent to his requests and "to every attempt of treatment request made and after in-patient appointment." Id. The plaintiff alleges he was sent to the emergency room at Ascension Mercy Hospital after his medical emergency was left unattended for over eleven weeks. Id. He says that Dodge

transferred him to "Winnebago Institution," even though he "was never to leave [D]odge Corr and a medical hold should have been placed on [his] transfer." Id. He says he received treatment at Winnebago, but that by then he "had to have [his] left toe removed" because of the delay in treatment. Id. The plaintiff says he then was sent back to Dodge and placed in the infirmary. Id.

The plaintiff next alleges that defendant Jodi Fields failed to help him rehabilitate after the serious injury to his left foot, "after pleas for her to help reasonable accomendate of a wheelchair and other accommodations." Id. at 4. The plaintiff makes the same claim against Fields as he made against the HSU manager—that she was deliberately indifferent to his treatment requests and that due to her actions, he was sent to the emergency department at Ascension Mercy after his injury was left treated for over eleven weeks. Id. As he did with the HSU manager, the plaintiff alleges that Dodge transferred him to Winnebago, where he had to have his left toe removed, and he argues that Fields caused him physical and emotional pain. Id.

The amended complaint was not prepared on this court's official complaint form. It does not contain a signature page. It does not state what relief the plaintiff seeks. Page 2 of the amended complaint cites the statutes providing jurisdiction over the plaintiff's purported federal and state claims and his request for declaratory relief. Id. at 2. But he does not say what state laws he believes the defendants violated, and the amended complaint contains no request for declaratory relief.

The plaintiff's original complaint *was* prepared on the court's official complaint form. Dkt. No. 1. It named only the Department of Corrections as a defendant. Id. at 1. It made no factual allegations; in the "Statement of Claim" section, the original complaint said only that the plaintiff was "sending . . . back" the §1983 complaint form because he did not understand it. Dkt. No. 1 at 2. The plaintiff attached to the original complaint a letter that contained allegations similar to those in the amended complaint. Dkt. No. 1-1. It also said that the plaintiff began having trouble with his leg and foot within three to four weeks of his October 13, 2021 arrival at Dodge. Id. at 1. He said he wrote to the HSU several times, and medical staff gave him only Tylenol and returned him to his cell. Id. The plaintiff's letter said that medical staff did not send him to the hospital or provide other treatment. Id. He alleged that his left big toe began to turn red, so medical staff gave him antibiotics for a suspected infection. Id. at 2. He asserted that after eleven weeks, he was sent to Winnebago. Id. In the letter, the plaintiff requested $9 million for "neglect [and] pain [and] suffering [and] lost wages." Id.

The plaintiff attached to the original complaint various exhibits, including an institutional complaint the plaintiff filed against HSU staff and medical files from a hospital visit in April 2022. Id. at 3, 5–8. The medical files include pictures of what the court presumes are the plaintiff's left leg and foot. Id. at 7–8. The court notes that the foot is missing the big toe and has a large scar down the entire calf to about the ankle area of the foot. Id. It appears this medical visit took place after the events alleged in the complaint and amended

complaint because the notes mention the plaintiff's "history of peripheral vascular disease . . . on 01/12/2022 as well as a left great toe amputation and partial resection of the metacarpal head on 01/26/2020." Id. at 6.

C.    Analysis

The court reviews the plaintiff's allegations under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

To satisfy the objective component, the plaintiff must show that he had a medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir.

2010)). How long a delay is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" Id. (quoting McGowan, 612 F.3d at 640). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). Neither negligence nor medical malpractice is enough to support an Eighth Amendment claim. See Farmer, 511 U.S. at 835–36; Estelle, 429 U.S. at 106.

The original complaint, the accompanying letter, the attachments and the amended complaint allege that medical staff at Dodge failed to properly treat the plaintiff's left leg and foot for over eleven weeks. He says medical staff provided him only Tylenol for his pain and antibiotics when his toe reddened. He eventually was sent to a hospital and had to have his left big toe amputated. He alleges that that procedure was necessary because medical staff at Dodge delayed his treatment. The plaintiff also may be alleging that he was not provided adequate rehabilitation at Dodge after his toe was amputated. He also seems to contest his brief transfer to Winnebago, even though he says he was provided medical treatment there. The plaintiff sues two defendants: Jodi Fields and the Doe HSU Manager at Dodge. The complaint does not specify who Fields is or what her role is or was at Dodge or in the plaintiff's medical treatment.

The court concludes that the amended complaint, as alleged, does not sufficiently state a claim for relief against Fields or the Doe HSU Manager. To state a claim against under §1983, the plaintiff "must establish a defendant's

personal responsibility for any claimed deprivation of a constitutional right."
Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000). The amended complaint
does not do this. The plaintiff says the defendants failed to provide adequate
medical treatment before and perhaps after he suffered a serious left foot
injury. He says that the defendants' actions caused him to be sent to the
emergency room and have his toe amputated. But the plaintiff does not
describe what the defendants did. He does not say whether Fields or the Doe
Manager personally treated his left leg and foot, whether they are nurses or
doctors or whether they are administrative supervisors in the HSU. He does not
explain whether Fields or the HSU manager were personally aware of the
plaintiff's medical issues (although he says he pleaded with both of them), were
personally responsible for his medical treatment and/or personally failed to
provide that treatment.

The amended complaint also suggests one or both defendants is a
supervisor of the Dodge HSU. Under §1983, "[g]overnment officials may not be
held liable for the unconstitutional conduct of their subordinates under a
theory of *respondeat superior*." Iqbal, 556 U.S. at 676. Supervisors are
responsible only "for what they do themselves, not for what their subordinates
do." Day v. Subsecretario del Sistema Penitenciario Federal, 838 F. App'x 192,
193 (7th Cir. 2021). To be held liable under 42 U.S.C. §1983, supervisors
"must know about the conduct and facilitate it, approve it, condone it, or turn
a blind eye for fear of what they might see." Sanville v. McCaughtry, 266 F.3d
724, 740 (7th Cir. 2001). That means that if non-defendant medical staff

mistreated the plaintiff, the defendants cannot be held constitutionally liable unless the plaintiff can show the defendants knew about the mistreatment and allowed, approved or knowingly ignored it. The amended complaint does not allege enough to satisfy that standard.

The plaintiff's complaints also contain contradictions or confusing allegations. The plaintiff alleges that he did not receive any treatment for eleven weeks, but he also says that he went to the HSU several times where he received Tylenol and antibiotics from medical staff. That suggests that medical staff did not disregard his medical issue, though it is possible they were negligent in treating it or that they mistreated it. But if the medical staff were only negligent, the plaintiff would not state an Eighth Amendment claim because neither negligence nor medical malpractice constitutes an Eighth Amendment violation. See Farmer, 511 U.S. at 835–36; Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015). The plaintiff also says he had his toe amputated after he spent eleven weeks at Dodge, beginning in October 2021. But the medical notes he attached say that he had his "left great toe amputation . . . on 01/26/2020." Dkt. No. 1-1 at 6. That suggests his toe was amputated nearly two years before he arrived at Dodge.[1] The defendants cannot be liable for injuries that occurred before the plaintiff was in their care.

_____

[1] The Department of Corrections' inmate locator website shows that the plaintiff was admitted to Dodge from the Marathon County Jail on October 13, 2021. https://appsdoc.wi.gov/lop/details/detail. He was transferred to Winnebago on December 22, 2021 and returned to Dodge December 31, 2021. Id. It appears that the plaintiff was at Dodge for about nine weeks at the end of 2021, and that he was at Winnebago for nine days before being returned to

The complaint and amended complaint are unclear and do not state a claim against either named defendant. But it is possible that if the plaintiff provides additional details about the timeline and events of his allegedly inadequate medical care, he could state a claim against one or both defendants or other medical staff whom he believes provided unconstitutional medical care for his foot and leg injuries. The court will give the plaintiff an opportunity to amend his complaint a second time to clear up the confusion and better explain his claims.

The court is enclosing a copy of its amended complaint form. The plaintiff must write the word "Second" above the words Amended Complaint at the top of page 1. He must list the case number for this case (23-cv-252) on the first page. On the first page, on the lines under "(Full name of defendant(s))," the plaintiff must list all the defendants he wants to sue. He also should list the defendants in question A.2 at the bottom of the first page, as well the states where they live and their addresses (if he knows them). On pages two and three in the section titled "Statement of Claim," the plaintiff should describe on the lines provided what happened to him—the names of the people who he believes violated his rights (or their job descriptions, if he doesn't know their names); what each person did to violate his rights; when each person violated his rights; where the people were when they violated his rights; and, if he knows, why each person violated his rights. If there is not enough space on those

_____

Dodge at the end of December 2021. But as noted, the medical records show the toe being amputated nearly two years before the plaintiff arrived at Dodge.

pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. On page four of the complaint form, under "Jurisdiction," the plaintiff should tell the court whether he believes that the defendants violated a federal law (if so, he should mark the first box) or whether they violated state law (if so, he should mark the second box). Under the "Relief Wanted" section on page four, he should write what he wants the defendants to give him if he wins this lawsuit; if he wants money, he should say how much money he wants. If he wants some other kind of relief, he should describe it. And, as he did with the original complaint, the plaintiff must sign the fifth page, date it and put his register number and his address.

The second amended complaint does not need to be long or use legal language or list cases or statutes, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate the plaintiff's rights. ***The second amended complaint takes the place of the prior complaints and must be complete by itself. The plaintiff may not refer the court back to his original complaint or to his amended complaint.*** He must repeat in the second amended complaint any of the facts from the original or amended complaint that he believes are necessary to support his claims.

Even if the plaintiff complies with this order and files a second amended complaint, he may not seek declaratory relief. The plaintiff no longer is incarcerated at Dodge. Because the plaintiff has been transferred to another institution, "a declaratory judgment would not affect [the defendants'] behavior

towards [him]." Pearson v. Welborn, 471 F.3d 732, 743 (7th Cir. 2006) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 103–04 (1983), and Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998)). Even if the plaintiff were still at Dodge, the harm for which he seeks—having his leg and toe pain ignored—is no longer ongoing. The plaintiff may not seek declaratory relief for completed harm that occurred in the past. Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). The proper relief for that completed harm is an award of monetary damages.

## III. Request for Appointment of Counsel

The plaintiff did not file a motion asking the court to appoint a lawyer to represent him in this lawsuit. But in the original complaint, he asks "if [he] could please get someone to counsel [him]" to help him understand the §1983 complaint form. Dkt. No. 1 at 2. The court also received a letter from the plaintiff on March 30, 2023, in which he mentioned his previous request for help and asked if he could "please get someone to let [him] know if [he is] getting couns[el] or not." Dkt. No. 11.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to

13

volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This

includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not satisfied either of these requirements. He does not say whether he has tried to find a lawyer on his own or, if he has, what responses he received. Even if he had, the plaintiff has not explained why he is one of those plaintiffs most in need of a lawyer to help him litigate this lawsuit. The plaintiff said in the original complaint that he did not understand the §1983 complaint form. But in the letter he attached to that form, the plaintiff identified the defendants he wanted to sue, gave a date during which his alleged injury occurred and explained the facts that he believed entitled him to monetary relief under §1983. He then filed an amended complaint in which he listed laws governing federal court jurisdiction and provided additional details about the events that took place at Dodge. These documents show that the plaintiff understands what happened to him and is able to describe what happened to him. Although the plaintiff's filings could be clearer—and will need to be clearer in a second amended complaint if he wishes to proceed—the

plaintiff has not given the court any reason to believe that he can't understand the court's instructions or comply with those instructions. The plaintiff has not said that there is some reason that he can't describe for the court what happened, when it happened and who did it.

As time goes on, the legal and factual issues may become too complicated for the plaintiff, his circumstances may change or he may find himself unable to obtain the information he believes he needs to prove his claims. If that happens, it may be appropriate for the court to try to find a volunteer lawyer to represent the plaintiff. But at this early stage of the case, the court cannot conclude that the plaintiff can't describe what happened unless he has a lawyer helping him. The court will deny the plaintiff's request for assistance of counsel without prejudice. That means that if the case continues, he can ask the court for a lawyer again at a later time.

## IV. Conclusion

The court **DENIES AS MOOT** the plaintiff's first motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's second motion for leave to proceed without prepaying the filing fee. Dkt. No. 6.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's request for appointment of counsel. Dkt. Nos. 1, 11

The court **CONCLUDES** that the plaintiff's amended complaint fails to state a claim. Dkt. No. 10.

The court **ORDERS** that the plaintiff may file a second amended complaint that complies with the instructions in this order. If the plaintiff chooses to file a second amended complaint, he must do so in time for the court to *receive it* by the end of the day on **July 28, 2023**. If the plaintiff files a second amended complaint in time for the court to *receive* it by the end of the day on July 28, 2023, the court will screen the second amended complaint as required by 28 U.S.C. §1915A. If the plaintiff does not file a second amended complaint by the deadline, the court will dismiss this case based on the plaintiff's failure to state a claim in his amended complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Case 2:23-cv-00252-PP   Filed 06/19/23   Page 17 of 18   Document 13

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank amended complaint form.

Dated in Milwaukee, Wisconsin this 19th day of June, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**